# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| KYRA POWELL, on behalf of herself and all others similarly situated, | Case No. 2:09-cv-01800-LSC |
| Plaintiffs, | **DEFENDANT'S MOTION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT AND TO DISMISS ACTION** |
| v. | |
| AT&T MOBILITY, LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION .................................................................................1

BACKGROUND ....................................................................................2

    A.    Powell Agrees To Arbitrate Her Dispute with ATTM. ......................2

    B.    The Consumer-Friendly Features Of ATTM's Arbitration
            Provision............................................................................................3

    C.    Dispute Resolution Under ATTM's 2006 Arbitration Provision. .......6

    D.    Powell Sues ATTM Notwithstanding Her Agreement To
            Arbitrate...........................................................................................7

ARGUMENT .........................................................................................8

I.    THE FAA MANDATES ENFORCEMENT OF POWELL'S
     CONTRACTUAL AGREEMENT TO ARBITRATE...................................8

II.    POWELL CANNOT AVOID HER OBLIGATION TO ARBITRATE
      BY INVOKING ALABAMA LAW ..........................................................10

    A.    ATTM's Arbitration Provision Is Enforceable Under Alabama
            Law. ................................................................................................11

            1.    Powell Cannot Show That Her Arbitration Agreement Is
                 Procedurally Unconscionable Under Alabama Law................11

            2.    Powell Cannot Show That Her Arbitration Agreement Is
                 Substantively Unconscionable Under Alabama Law ..............13

    B.    The FAA Would Preempt Any State-Law Rule Under Which
            ATTM's Arbitration Provision Would Be Deemed
            Unenforceable. ................................................................................14

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)...................................................................................16

*Battels v. Sears Nat'l Bank*,
    365 F. Supp. 2d 1205 (M.D. Ala. 2005)...........................................13

*Billups v. Bankfirst*,
    294 F. Supp. 2d 1265 (M.D. Ala. 2003)...........................................13

*Blue Cross Blue Shield of Ala. v. Rigas*,
    923 So. 2d 1077 (Ala. 2005).........................................11, 12, 13, 16

*Caley v. Gulfstream Aerospace Corp.*,
    428 F.3d 1359 (11th Cir. 2005).........................................................15

*Conseco Fin. Corp.–Ala. v. Boone*,
    838 So. 2d 370 (Ala. 2002)................................................................11

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681 (1996)............................................................................10

*Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*,
    430 F.3d 1269 (10th Cir. 2005).........................................................17

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)..............................................................................9

*Gilmer v. Interstate Johnson/Lane Corp.*,
    500 U.S. 20 (1991)..............................................................................15

*Gipson v. Cross Country Bank*,
    294 F. Supp. 2d 1251 (M.D. Ala. 2003)...........................................13

*Green Tree Fin. Corp. v. Lewis*,
    813 So. 2d 820 (Ala. 2001)................................................................11

*Green Tree Fin. Corp. v. Vintson*,
    753 So. 2d 497 (Ala. 1999)................................................................11

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    128 S. Ct. 1396 (2008)........................................................................17

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) .................................................................15

*Jim Walter Homes, Inc. v. Saxton*,
    880 So. 2d 428 (Ala. 2003) ...................................................................12

*Lawrence v. Household Bank (SB), N.A.*,
    343 F. Supp. 2d 1101 (M.D. Ala. 2004) ................................................13

*Layne v. Garner*,
    612 So. 2d 404 (Ala. 1992) ....................................................................13

*Leeman v. Cook's Pest Control, Inc.*,
    902 So. 2d 641 (Ala. 2004) ..............................................................11, 12

*Leonard v. Terminix Int'l Co.*,
    854 So. 2d 529 (Ala. 2002) ....................................................................14

*Makarowski v. AT&T Mobility, LLC*,
    2009 WL 1765661 (C.D. Cal. June 18, 2009) .........................................2

*Milligan v. Comcast Corp.*,
    2007 WL 4885492 (N.D. Ala. Jan. 22, 2007) ........................................13

*Mitchell Nissan, Inc. v. Foster*,
    775 So. 2d 138 (Ala. 2000) ....................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .....................................................................................9

*Patriot Mfg., Inc. v. Dixon*,
    399 F. Supp. 2d 1298 (S.D. Ala. 2005) .................................................11

*Perry v. Thomas*,
    482 U.S. 483 (1987) ..........................................................................10, 15

*Pitchford v. AmSouth Bank*,
    285 F. Supp. 2d 1286 (M.D. Ala. 2003) ...........................................11, 13

*Potts v. Baptist Health Sys., Inc.*,
    853 So. 2d 194 (Ala. 2002) ....................................................................11

*Preston v. Ferrer*,
    128 S. Ct. 978 (2008)......................................................................9, 16

*Sears Termite & Pest Control, Inc. v. Robinson*,
    883 So. 2d 153 (Ala. 2003)................................................................13

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)..............................................................................9

*Stephens v. Wachovia Corp.*,
    2008 WL 686214 (W.D.N.C. Mar. 7, 2008) ...............................11, 14

*Strawn v. AT&T Mobility, Inc.*,
    593 F. Supp. 2d 894 (S.D. W. Va. 2009).............................................2

*Taylor v. Citibank USA, N.A.*,
    292 F. Supp. 2d 1333 (M.D. Ala. 2003)............................................13

*Taylor v. First N. Am. Nat'l Bank*,
    325 F. Supp. 2d 1304 (M.D. Ala. 2004)................................13, 14, 15

*United States v. Corum*,
    362 F.3d 489 (8th Cir. 2004) ..............................................................9

*United States v. Evans*,
    476 F.3d 1176 (11th Cir.), *cert. denied*, 128 S. Ct. 193 (2007) .........9

*Vaden v. Discover Bank*,
    129 S. Ct. 1262 (2009).......................................................................9

**STATUTES, RULES AND REGULATIONS**

9 U.S.C. § 2.................................................................................9, 10

9 U.S.C. § 10....................................................................................17

Federal Rule of Civil Procedure 11(b)..................................................4

**MISCELLANOUS**

AAA, *Supplementary Procedures for Consumer-Related Disputes* §§ C-5,
    C-6....................................................................................................6

**Page(s)**

AAA, *Supplementary Procedures for Consumer-Related Disputes* § C-8 ...............4

Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*,
  59 Vand. L. Rev. 729 (2006) .............................................................................15

**INTRODUCTION**

Defendant AT&T Mobility LLC ("ATTM") respectfully moves to compel arbitration in accordance with plaintiff Kyra Powell's arbitration agreement. Powell's contract for wireless service requires the parties to resolve their disputes in arbitration or small claims court. Under both the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and Alabama law, that arbitration agreement is fully enforceable. This Court should compel Powell to honor her arbitration agreement and dismiss this action.

Powell may argue that her arbitration agreement is unenforceable because it requires that arbitration take place on an individual basis, thereby precluding class actions. But federal courts in Alabama have routinely enforced agreements to arbitrate on an individual basis. Indeed, ATTM's arbitration clause is an extraordinarily consumer-friendly provision—far more so than other arbitration agreements that courts in this state have upheld. The process under ATTM's provision is streamlined and simplified, ensuring that Powell has an inexpensive and efficient method of dispute resolution. Among other things, ATTM has committed to pay all of the costs of arbitration whether Powell wins or loses. If Powell prevails in arbitration, she may obtain the same remedies—including punitive damages, injunctive and declaratory relief, and attorneys' fees—that are available in court. In addition, if the arbitrator awards Powell an amount greater

than ATTM's last settlement offer, ATTM must pay her a minimum recovery of at least $10,000, plus double attorneys' fees.

For these reasons, a federal court recently observed that "ATTM's arbitration agreement contains perhaps the most fair and consumer-friendly provisions this Court has ever seen*." Makarowski v. AT&T Mobility, LLC*, 2009 WL 1765661, at *1, *3 (C.D. Cal. June 18, 2009); *see also Strawn v. AT&T Mobility, Inc.*, 593 F. Supp. 2d 894, 900 n.6 (S.D. W. Va. 2009) (describing ATTM's arbitration provision as "unusually customer-centered"). Because ATTM's arbitration provision does not deprive Powell of remedies she would have in court, imposes no costs (much less excessive ones), and provides powerful incentives to pursue her claims, the provision is fully enforceable.

## BACKGROUND

### A.    Powell Agrees To Arbitrate Her Dispute with ATTM.

Powell, an Alabama resident, is a customer of ATTM, a wireless service provider. First Amended Nationwide Class Action Complaint ("FAC") ¶ 14; Decl. of Lindsay Stewart ¶¶ 3-4. On March 19, 2009, Powell purchased an iPhone 3G-S at an AT&T store. Stewart Decl. ¶ 4 & Ex. 1. During that transaction, Powell accepted the terms of ATTM's wireless service agreement by signing her name on an electronic signature-capture device under the acknowledgement: "I agree to the Customer Service Summary (CSS), Terms of Service, Rate Plan and features brochure for the services described in the CSS, all of which were presented to me

prior to my signing below." Stewart Decl. ¶¶ 4-5 & Exs. 1 & 2; *see also* Decl. of Ramon L. Menendez ¶¶ 3-5. The service agreement expressly incorporated the "binding arbitration clause" of "AT&T's current Terms of Service #FMSTCT 02090123E." Stewart Decl. ¶ 6 & Ex. 3 at 3; *see also* Decl. of Richard J. Rives Ex. 1 (attaching complete copy of ATTM's Terms of Service to which Powell agreed).

ATTM's Terms of Service require both ATTM and Powell "to arbitrate **all disputes and claims** between us" or to pursue such disputes in small claims court. Rives Decl. Ex. 1, at 14 (boldface in original). The Terms further specify that arbitration must be conducted on an individual rather than class-wide basis. *Id.* at 15 & 18.

**B.     The Consumer-Friendly Features Of ATTM's Arbitration Provision.**

To ATTM's knowledge, its Terms of Service contain the most pro-consumer arbitration agreement in the country. Richard Nagareda, a law professor at Vanderbilt University whose scholarship focuses on aggregate dispute resolution, observes that he has "never seen an arbitration provision that has gone as far as [ATTM's] to ensure that consumers and attorneys have adequate incentives to bring claims" on an individual basis. Decl. of Richard A. Nagareda ¶ 12. In particular, the arbitration provision to which Powell agreed includes the following features (Rives Decl. Ex. 1, at 14-18):

- **Cost-free arbitration for claims up to $75,000:** "[ATTM] will pay all [American Arbitration Association ("AAA")] filing, administration, and arbitrator fees" for all claims up to $75,000 unless the arbitrator determines that the claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[1]

- **$10,000 minimum award if arbitral award exceeds ATTM's settlement offer:** If the arbitrator awards the customer more than ATTM's "last written settlement offer made before an arbitrator was selected," ATTM will pay the customer the greater of $10,000 or the arbitral award;

- **Double attorneys' fees:** If the arbitrator awards the customer more than ATTM's last written settlement offer, then "[ATTM] will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses * * * that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration";[2]

- **ATTM disclaims right to seek attorneys' fees:** "Although under some laws [ATTM] may have a right to an award of attorneys' fees and expenses

---

[1]  In the event that an arbitrator concludes that a customer's claim is frivolous, the AAA's consumer arbitration rules would cap the customer's arbitration costs at $125 for claims of $10,000 or less. *See* Decl. of Paul Hughes Ex. 5 (AAA, *Supplementary Procedures for Consumer-Related Disputes* § C-8).

[2]  This attorney premium "supplements any right to attorneys' fees and expenses [that the customer] may have under applicable law." Rives Decl. Ex. 1 at 18. Thus, even if an arbitrator were to award a customer less than ATTM's last settlement offer, the customer would be entitled to an attorneys' fee award to the same extent as if the claim had been brought in court.

if it prevails in an arbitration, [ATTM] agrees that it will not seek such an award [from the customer]";

- **Small claims court option:** Either party may bring a claim in small claims court;

- **No confidentiality requirement:** The parties need not keep the arbitration confidential;

- **Full remedies available:** The arbitrator can award the same remedies to individual customers (including punitive damages, statutory attorneys' fees, and injunctions) that a court could award;

- **Flexible consumer procedures:** Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer-Related Disputes, which the AAA designed with consumers in mind;

- **Conveniently located hearing:** Arbitration will take place "in the county * * * of [the customer's] billing address"; and

- **Choice of in-person, telephonic, or no hearing**: For claims of $10,000 or less, customers have the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a hearing by telephone, or a "desk" arbitration

in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."[3]

## C.     Dispute Resolution Under ATTM's 2006 Arbitration Provision.

ATTM has tailored the dispute-resolution process to the needs of its customers. A formal arbitration proceeding between ATTM and one of its customers is the last step of the dispute-resolution process—one that is rarely necessary because the overwhelming majority of disputes are resolved through less formal means. Like most large service providers, ATTM has a customer care department whose job it is to handle customer complaints. See Rives Decl. Ex. 1 at 14. But unlike most companies, ATTM's arbitration provision makes resolving complaints to customers' satisfaction particularly imperative. Because the provision requires ATTM to pay the full cost of any arbitration in which the customer seeks $75,000 or less and to pay the customer $10,000 plus double attorneys' fees if the arbitral award exceeds ATTM's last settlement offer, it is almost always in ATTM's interest for its customer service representatives to make adjustments to bills or provide credits against future bills in order to resolve customer complaints.

---

[3]     Under the AAA rules that would otherwise apply, either party may insist on a hearing in cases involving claims of $10,000 or less. *See* Hughes Decl. Ex. 5 (AAA, *Supplementary Procedures for Consumer-Related Disputes* §§ C-5, C-6). For claims exceeding $10,000, a hearing would be held unless both parties agreed to forgo it. *Id.*

It is only if a customer cannot resolve her dispute informally through ATTM's customer service department that the arbitration provision comes directly into play. The first step of the formal dispute-resolution process is for the customer to notify ATTM of the dispute in writing. Hughes Decl. Ex. 3. That is as simple as mailing a letter to ATTM or submitting a one-page Notice of Dispute form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms). *Id.* Ex. 3. If ATTM and the customer cannot resolve the dispute within 30 days, the customer may begin the formal arbitration process. To do so, the customer need only fill out a one-page Demand for Arbitration form and send copies to the AAA and to ATTM. Customers may either obtain a copy of the demand form from the AAA's web site (at http://www.adr.org) or use the simplified form that ATTM has posted on its web site (at http://.att.com/forms). *Id*. Ex. 4. To further assist its customers, ATTM has posted on its web site a layperson's guide on how to arbitrate a claim (at http://www.att.com/arbitration-information). *Id*. Ex. 2.

### D. Powell Sues ATTM Notwithstanding Her Agreement To Arbitrate.

Despite her agreement to arbitrate under ATTM's dispute resolution process, Powell commenced this putative class-action lawsuit against ATTM on September 8, 2009, and filed an amended complaint on September 14, 2009. Powell alleges that her ATTM phone was stolen on September 5, 2009. FAC ¶ 16. Although she

does not contend that she was required to pay any charges incurred after she reported that her phone was stolen, she alleges that ATTM does not subsidize the cost of a "replacement wireless phone." *Id.* ¶ 20. She further alleges that ATTM failed to help her track her stolen phone or "disable [its] access to [ATTM's] network," and that if ATTM did so, "stealing or conversion of wireless phones would be far less prevalent[.]" *Id.* ¶¶ 7, 8, 13. She also argues that ATTM improperly profits from its alleged refusal to track or disable lost or stolen phones. *Id.* ¶ 10. Powell alleges claims for common-law conversion, trespass, and unjust enrichment. *Id.* ¶¶ 23-37. She seeks to represent a putative nationwide class of consumers "who, in the last six years, have had their wireless phones stolen or lost" (*id.* ¶ 21), and requests compensatory and punitive damages, injunctive and declaratory relief, as well as interest and costs. *Id*. ¶ 4 & at 8-9.[4]

## **ARGUMENT**

### I.  THE FAA MANDATES ENFORCEMENT OF POWELL'S CONTRACTUAL AGREEMENT TO ARBITRATE.

Powell's arbitration agreement is enforceable under the FAA, which mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

---

[4]     Because the issue presented by this motion is whether Powell is required to arbitrate her claims in accordance with her agreement, the merits of her claims are not before the Court at this time.   That said, Powell's underlying legal theory—that by not disabling or tracking the iPhone that was stolen from her, ATTM somehow "aided and abetted, conspired [with], and induced the thief" to steal her phone (FAC ¶¶ 25, 30)—is conspicuously weak.

revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements * * * [,] to place [these] agreements upon the same footing as other contracts[,] * * * [and to] manifest a liberal federal policy favoring arbitration agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks omitted). As the Supreme Court recently reiterated, the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 128 S. Ct. 978, 981 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)); *see also Vaden v. Discover Bank*, 129 S. Ct. 1262, 1271 (2009) (quoting *Preston*). Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

An arbitration agreement must meet two conditions for the FAA to apply: (1) the agreement must be "written"; and (2) it must be in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: The arbitration provision is in writing (*see* pages 3-4, *supra*), and Powell's agreement involves commerce. "It is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce." *United States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004); *see also United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir.), *cert. denied*, 128 S. Ct. 193 (2007) ("Telephones and cellular telephones are instrumentalities of interstate commerce."). Indeed, the arbitration

provision itself specifies that it is part of a contract involving interstate commerce that is governed by the FAA. Rives Decl. Ex. 1, at 15 ("This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision.").

Powell's claim also indisputably falls within the scope of the arbitration provision, which applies to "all disputes and claims" between her and ATTM. Rives Decl. Ex. 1, at 14. Accordingly, the FAA requires that her arbitration agreement be enforced, unless she can demonstrate the existence of grounds "for the revocation of any contract." 9 U.S.C. § 2; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 684-85 (1996); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). As we discuss below, no such grounds exist. Accordingly, the Court should compel arbitration and dismiss this action.

## II. POWELL CANNOT AVOID HER OBLIGATION TO ARBITRATE BY INVOKING ALABAMA LAW.

Powell may argue that her arbitration agreement is unconscionable under Alabama law because it requires arbitration on an individual (as opposed to a class-wide) basis. But time and time again, courts in Alabama have rejected such arguments. Even if, contrary to those cases, the arbitration agreement could be deemed unenforceable under Alabama law, that law would be preempted by the FAA.

**A.    ATTM's Arbitration Provision Is Enforceable Under Alabama Law.**

Under Alabama law, Powell cannot avoid her agreement to arbitrate on the ground of unconscionability unless she can "show ***both*** procedural ***and*** substantive unconscionability." *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005) (emphasis added).    Powell cannot prove either element of unconscionability—much less both.

**1.    Powell Cannot Show That Her Arbitration Agreement Is Procedurally Unconscionable Under Alabama Law.**

To establish procedural unconscionability, Powell was required to prove that she could not have obtained cell phone service "without signing an arbitration agreement." *Rigas*, 923 So. 2d at 1087.    The Alabama Supreme Court has repeatedly held that, to meet this burden, a party must have actually 'shop[ped] around' for a[n] * * * agreement that lacked an arbitration provision." *Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 647 (Ala. 2004).[5]    Moreover, a party asserting procedural unconscionability "***must present evidence*** indicating that he

_____

[5]    *See also Potts v. Baptist Health Sys., Inc.*, 853 So. 2d 194, 205-06 (Ala. 2002); *Conseco Fin. Corp.–Ala. v. Boone*, 838 So. 2d 370, 373 (Ala. 2002); *Green Tree Fin. Corp. v. Lewis*, 813 So. 2d 820, 825 (Ala. 2001); *Mitchell Nissan, Inc. v. Foster*, 775 So. 2d 138, 141 (Ala. 2000); *Green Tree Fin. Corp. v. Vintson*, 753 So. 2d 497, 504 (Ala. 1999); *accord Stephens v. Wachovia Corp.*, 2008 WL 686214, at *5 (W.D.N.C. Mar. 7, 2008) ("[T]he Plaintiff has not presented any evidence that she was unable to, or even attempted to, procure a checking account with another bank that would not have required a similar arbitration provision.") (applying Alabama law); *Patriot Mfg., Inc. v. Dixon*, 399 F. Supp. 2d 1298, 1312 (S.D. Ala. 2005) ("In the absence of evidence that the Dixons could not reasonably have procured a comparable mobile home from another vendor without signing an arbitration agreement, their "meaningful choice" ground for unconscionability rings hollow."); *Pitchford v. AmSouth Bank*, 285 F. Supp. 2d 1286, 1295 (M.D. Ala. 2003) ("Alabama Courts * * * require that a party 'shop around' in order to show that there was no meaningful alternative.").

or she could not have entered into a similar contract without an arbitration requirement either with the same party or with a competitor." *Jim Walter Homes, Inc. v. Saxton*, 880 So. 2d 428, 431 (Ala. 2003) (emphasis added).

In *Leeman*, for example, the court held that the plaintiffs had failed to establish procedural unconscionability because they "presented evidence indicating only that five of the untold total number of pest-control-service providers available * * * in the Birmingham metropolitan area required the consumer to assent to an arbitration agreement." 902 So. 2d at 647. On that evidence, the Alabama Supreme Court rejected the plaintiffs' argument that they lacked a meaningful choice as to whether to enter into an agreement requiring arbitration. *Id.*; *see also Rigas*, 923 So. 2d at 1088 (finding no procedural unconscionability because "[t]he evidence indicates that the Board did not attempt to secure from another health-insurance provider a group policy that did not include an arbitration provision").

Powell cannot prove that she "shopped around" for—and was unable to find—a cellular service provider that did not require an arbitration agreement. Indeed, Virgin Mobile—a company which offers wireless service in Alabama and operates on Sprint's cellular network—does not include a binding arbitration provision in its terms of service. Hughes Decl. Ex. 8. Hence, Powell cannot establish procedural unconscionability, which in turn dooms any unconscionability argument Powell might raise. *See Rigas*, 923 So. 2d at 1090.

**2.  Powell Cannot Show That Her Arbitration Agreement Is Substantively Unconscionable Under Alabama Law.**

Even if Powell could prove the existence of procedural unconscionability, she could not meet her burden of demonstrating that her arbitration agreement is substantively unconscionable.    Under  Alabama  law,  a  contract  term  is substantively unconscionable only if it is so outrageously unfair that "no man in his sense and not under delusion" would agree to it.  *Rigas*, 923 So. 2d at 1086; *see also Sears Termite & Pest Control, Inc. v. Robinson*, 883 So. 2d 153, 158 (Ala. 2003) (same); *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992) (same).

Five  different  federal  district  court  judges,  in  a  total  of  nine  separate decisions, have expressly held that arbitration provisions containing class waivers are ***not*** substantively unconscionable under Alabama law so long as the provision at issue does not (i) impose unreasonable costs on the consumer or (ii) limit the remedies available to the consumer.  *See Milligan v. Comcast Corp.*, 2007 WL 4885492, at *2 (N.D. Ala. Jan. 22, 2007); *Battels v. Sears Nat'l Bank*, 365 F. Supp. 2d 1205, 1217 (M.D. Ala. 2005); *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1112 (M.D. Ala. 2004); *Taylor v. First N. Am. Nat'l Bank*, 325 F. Supp. 2d 1304, 1319-22 (M.D. Ala. 2004); *Billups v. Bankfirst*, 294 F. Supp. 2d 1265, 1276-77 (M.D. Ala. 2003); *Gipson v. Cross Country Bank*, 294 F. Supp. 2d 1251, 1263-64 (M.D. Ala. 2003); *Pitchford*, 285 F. Supp. 2d at 1296; *Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1345 (M.D. Ala. 2003); *accord*

*Stephens v. Wachovia Corp.*, 2008 WL 686214, at \*5 (W.D.N.C. Mar. 7, 2008) (applying Alabama law).  ***No federal court in Alabama has held otherwise***.[6]

In each of these cases, the agreement required the customer to pay at least some costs of arbitration, and in none of them did the agreement provide affirmative incentives to pursue small claims.  Accordingly, because the arbitration agreements in these cases were not unconscionable, neither is ATTM's even more pro-consumer provision, which, as discussed above (at pages 5-7), obligates ATTM to pay the full cost of arbitration, places no limits on remedies, and requires ATTM to pay customers at least $10,000, plus double attorneys' fees, if the arbitral award exceeds ATTM's last settlement offer.

## B. The FAA Would Preempt Any State-Law Rule Under Which ATTM's Arbitration Provision Would Be Deemed Unenforceable.

For the reasons we have explained, there is no basis in Alabama law for refusing to enforce ATTM's arbitration provision, and this Court should reject any

---

[6]     These cases all distinguish *Leonard v. Terminix Int'l Co.*, 854 So. 2d 529, 535-39 (Ala. 2002), in which the Alabama Supreme Court invalidated an arbitration provision containing a class waiver because the provision "restrict[ed] the [plaintiffs] to a forum where the expense of pursuing their claim far exceed[ed] the amount in controversy" and barred them from recovering "indirect, special, or consequential damages," thereby "depriv[ing them] of a meaningful remedy."  *See*, *e.g., Pitchford*, 285 F. Supp. 2d at 1296 ("The Alabama Supreme Court's concerns in [*Leonard*] addressed a situation where the plaintiffs could not vindicate their rights because the costs of arbitration would exceed the potential recovery."); *Taylor*, 325 F. Supp. 2d at 1319 ("In *Leonard,* the Alabama Supreme Court held that an arbitration provision was unconscionable because it restricted the plaintiffs to a forum where the expense of pursuing their claim exceeded the amount in controversy."); *Stephens,* 2008 WL 686214, at \*5 (holding that the arbitration clause at issue was fully enforceable under Alabama law because, unlike in *Leonard*, the clause provided for cost-free arbitration and did not limit the plaintiff's substantive remedies).

invitation by Powell to hold otherwise. Even if this Court were to conclude that ATTM's arbitration is not enforceable under Alabama law merely because it precludes class actions, that law would be preempted by the FAA, for three reasons.

*First*, the "lack of class relief"—like the lack of trial by jury or limitations on full-blown discovery under the Federal Rules of Civil Procedure—is a "unique characteristic[]" of the arbitration process. Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 Vand. L. Rev. 729, 776 (2006). Thus, as the Fifth Circuit has explained, "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition,' characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 (5th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (citing *Gilmer* and *Iberia* in rejecting argument that class-arbitration waiver was unconscionable under Georgia law. In short, to invalidate an arbitration clause on the basis of a core characteristic of arbitration would run afoul of the FAA, which bars courts from "rely[ing] on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Perry*, 482 U.S. at 492 n.9.

**Second**, ATTM's pro-consumer arbitration provision—which heavily subsidizes individual arbitration by making it cost-free to consumers and providing them with powerful incentives to pursue individual arbitration—cannot be deemed to be unconscionable under Alabama law without creating a new unconscionability standard solely for arbitration provisions. As noted above, the generally applicable standard is that the party claiming unconscionability must establish that the challenged contractual term is so unfair that "no man in his sense and not under delusion" would agree to it. *Rigas*, 923 So. 2d at 1086. That simply can't be said of ATTM's pathbreaking arbitration provision. Accordingly, any holding that ATTM's provision is unconscionable would be preempted by the FAA because states may not "decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995).

**Third**, any state-law rule conditioning the enforceability of an arbitration agreement on the availability of class-wide proceedings would "frustrate[]" a "prime objective of an agreement to arbitrate"—*i.e.*, to "achieve streamlined proceedings and expeditious results." *Preston*, 128 S. Ct. at 986 (internal quotation marks omitted). Engrafting class procedures onto the individual-arbitration procedures to which Powell agreed would at the very least "hinder speedy resolution of the controversy." *Id.* Because class arbitration brings all of the burdens and delay of class-action litigation into the arbitral forum, it eliminates

the cost savings and expedition that arbitration is intended to achieve. Even worse, a state-law rule mandating the availability of class procedures would lead businesses to abandon arbitration altogether, as class arbitration combines the massive stakes of class-action litigation with the extremely limited availability of judicial review of arbitral awards. As the Tenth Circuit has observed, the standard for vacating an arbitral award is "among the narrowest known to law." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005) (internal quotation marks omitted); *see also* 9 U.S.C. § 10; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1403-04 (2008). No business would rationally place its fate in the hands of a single arbitrator who is subject to only very limited judicial review. Accordingly, under *Preston*, the FAA would preempt any Alabama-law rule conditioning the enforceability of an arbitration provision on the parties' amenability to the arbitrator conducting class-wide arbitration.

## CONCLUSION

The Court should issue an order (i) compelling Powell to pursue her claim in individual arbitration or in small claims court and (ii) dismissing this lawsuit.

DATED:  October 16, 2009

<div style="margin-left: 40%;">

*s/Jeffrey E. Holmes*
JEFFREY E. HOLMES (ASB-6330-L71J)
JOHNSTON BARTON PROCTOR & ROSE LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama 35209
Telephone:  (205) 458-9400
Direct Dial:  (205) 458-9472
Facsimile:   (205) 458-9500
Email:  jeh@johnstonbarton.com

</div>

Evan M. Tager
Archis A. Parasharami
Kevin Ranlett
MAYER BROWN LLP
1999 K Street NW
Washington, DC   20006
Telephone:   (202) 263-3000
Facsimile:   (202) 263-3300

<div style="margin-left: 40%;">

Attorneys for Defendant
AT&T Mobility LLC

</div>

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 16th day of October, 2009, electronically filed the foregoing Defendant's Motion To Compel Arbitration Pursuant To The Federal Arbitration Act And To Dismiss Action via the Court's CM/ECF electronic filing system which has sent electronic notification of this filing upon all counsel of record in this cause, whose names and addresses are as follows:

D. Frank Davis, Esq.
fdavis@davisnorris.com
John E. Norris, Esq.
jnorris@davisnorris.com
Wesley W. Barnett, Esq.
wbarnett@davisnorris.com
Davis & Norris LLP
One Highland Place
2151 Highland Avenue, Suite 100
Birmingham, Alabama 35205


*s/Jeffrey E. Holmes*
OF COUNSEL