FILED

2010 Sep-30  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KYRA POWELL,                          ]
                                      ]
        Plaintiff,                    ]
                                      ]
        vs.                           ]    2:09-CV-01800-LSC
                                      ]
AT&T MOBILITY, LLC,                   ]
                                      ]
        Defendant.                    ]

MEMORANDUM OF OPINION AND ORDER

The Court has for consideration defendant AT&T Mobility, LLC's ("ATTM") motion to compel arbitration and dismiss, which was filed on October 16, 2009.  (Doc. 5.)  The motion has been briefed by the parties and is ripe for review.[1]

I.      Background.

Plaintiff Kyra Powell ("Powell"), a resident citizen of Alabama, is an ATTM customer.  Powell purchased an iPhone 3GS at an AT&T store on March 19, 2009.  At that time, Powell accepted the terms of ATTM's wireless

---

[1]On December 4, 2009, Defendant filed an unopposed motion for an extension of the page limit for its reply brief.  (Doc. 20.)  That motion is GRANTED.

service agreement by signing her name on an electronic signature capture device.  Her signature was made under the statement: "I agree to the Customer Service Summary (CSS), Terms of Service, Rate Plan and features brochure for the services described in the CSS, all of which were presented to me prior to my signing below."  The service agreement "incorporates and includes by reference AT&T's current Terms of Service #FMSTCT02090123E including its binding arbitration clause."

According to ATTM's Terms of Service, ATTM and Powell "agree to arbitrate all disputes and claims between us," or to pursue those disputes in small claims court.  The Terms of Service also state: "Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. . . . You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action."  ATTM's arbitration provision includes the following features: (1) cost-free arbitration for non-frivolous claims up to $75,000; (2) a $10,000 minimum award and double attorneys' fees, plus expenses, if the arbitrator awards the customer more than ATTM's last written settlement offer made before an arbitrator is

selected; (3) ATTM disclaims the right to seek attorneys' fees; (4) the parties do not have to keep the arbitration confidential; (5) the arbitrator can award the same remedies available to the customer in court; (6) arbitration will take place in the county of the customer's billing address; and (7) for claims of $10,000 or less, customers can choose an in-person hearing, hearing by telephone, or a "desk" arbitration, which is conducted solely on the documents submitted.

On September 8, 2009, Powell initiated this proposed class action lawsuit against ATTM, claiming state law causes of action for conversion, trespass, and unjust enrichment.  She contends her ATTM telephone was stolen on September 5, 2009, and ATTM refused to track her telephone.  She argues ATTM improperly profited by requiring her to pay for a replacement telephone and then allowing the holder of her first telephone to activate service and use the stolen telephone.  She seeks to represent a putative nationwide class of consumers "who, in the last six years, have had their wireless phones stolen or lost."  Powell maintains that the replacement value for her telephone is approximately $500.

II.    Analysis.

"Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), written agreements to arbitrate a dispute arising out of a transaction involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007).  "The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." *Id.* (quoting *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002)).  Therefore, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996)).  The parties agree that Alabama law governs the contract in this case.

Powell does not dispute that the arbitration provision at issue is written and arises out of a transaction involving commerce.  Powell does not maintain that she did not agree to the arbitration provision by electronic signature on March 19, 2009.  Rather, Powell argues that arbitration is not

appropriate in this case because the arbitration agreement in ATTM's Terms of Service is unconscionable.  (Doc. 19.)  Because Powell's contention "place[s] in issue the enforceability of the arbitration agreement itself," this Court, and not an arbitrator, decides the issue. *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002).

"Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Id*. at 1306-07 (citing *Green Tree Fin. Corp. v. Wampler*, 749 So.2d 409, 415, 417 (Ala. 1999)). "[A]rbitration agreements are not in themselves unconscionable." *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005) (citing *Ex parte McNaughton*, 728 So. 2d 592, 597-98 (Ala. 1998)).   An unconscionable contract provision is, instead, one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Id*. (quoting *Southern United Fire Ins. Co. v. Howard*, 775 So. 2d 156, 163 (Ala. 2000)).

The Alabama Supreme Court outlined four factors that are important in determining whether a contract is unconscionable:

> In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.

*Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992).  Moreover, the Alabama Supreme Court recognizes a distinction between "substantive unsconscionability" and "procedural unconscionability."  *Rigas*, 923 So. 2d at 1086.  Substantive unconscionability

> relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

*Id*. at 1086-87 (quoting *Ex parte Thicklin*, 824 So. 2d 723, 731 (Ala. 2002)(internal quotations omitted)).  Procedural unconscionability

> deals with 'procedural deficiencies in the contract
> formation process, such as deception or a refusal to
> bargain over contract terms, today often analyzed in
> terms of whether the imposed-upon party had
> meaningful choice about whether and how to enter
> into the transaction.

*Id*. at 1088 (quoting *Thicklin*, 824 So. 2d at 731 (internal quotations omitted)).   "To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show *both* procedural and substantive unconscionability."   *Id*. (emphasis added).

A.    Procedural Unsconcionability.[2]

The Alabama Supreme Court has held that "a primary indicium of unconscionability in the modern consumer-transaction context is whether the consumer has the ability to obtain the product made the basis of the action without signing an arbitration clause."   *Rigas*, 923 So. 2d at 1087 (quoting  *American Gen. Fin., Inc. v. Branch*, 793 So. 2d 738, 750 (Ala.

---

[2]In her initial response memorandum, Powell does not address the issue of procedural unsconscionability.  After ATTM argued in its reply memorandum that both procedural and substantive unconscionability were indeed required under Alabama law, Powell raised the issue in a surreply.  (Doc. 27.)  A surreply was not authorized in the Court's briefing schedule, and Powell did not request leave of Court to file a surreply. However, ATTM subsequently filed supplemental declarations in response to the surreply (Doc. 30), so the Court will allow the filing.

2000)) (internal quotations omitted). "In determining whether an arbitration agreement is procedurally unconscionable, [the court has] looked at whether the consumer could obtain the product from the vendor or from another vendor without agreeing to an arbitration provision." *Id.* "The burden of demonstrating that the product cannot be obtained without signing an arbitration agreement is on the party asserting unconscionability." *Id.*

Powell argues that she had no meaningful choice whether to enter into a contract with ATTM because she could not obtain wireless telephone service without signing an arbitration agreement, and she knew the terms of the contract with ATTM were not negotiable. (Doc. 27 at 1-2.) Like the plaintiffs in *Leeman v. Cook's Pest Control*, 902 So. 2d 641 (Ala. 2004), and *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077 (Ala. 2005), however, Powell lacks evidence to support her claims.[3] Powell does not

---

[3]In her surreply, Powell proffers the following facts: (1) "AT&T possesses enormously greater bargaining power than its consumers"; (2) iPhones are unique and offered only by AT&T's wireless service; (3) Powell "knew" ATTM's Terms of Service were not negotiable; (4) it is "generally known" that "all of the major carriers with acceptable coverage" insist on arbitration provisions; and (5) Virgin Mobile, whose contracts did not include an arbitration clause, included a requirement to litigate in New York, which was equally unacceptable to Powell. (Doc. 27 at 1-2.) While the fact that ATTM has greater bargaining power is not disputed in this case, it alone does not establish procedural

submit any evidence that she attempted to negotiate the terms of her agreement with ATTM or tried to find a wireless phone agreement without an arbitration clause. *See Leeman*, 902 So. 2d at 648; *Rigas*, 923 So. at 1089-90. "It is difficult to conclude that [a plaintiff] lack[s] a meaningful choice- and that this lack of choice could render the arbitration provision unconscionable- when in fact they never undertook to actually make a choice." *Leeman*, 902 So. 2d at 647.

Arguing that "shopping around" would be futile, Powell proffers the declaration of attorney John E. Norris, who states that after researching ATTM's competitors in Alabama, "it appears that all other cell phone providers," except Virgin Mobile, require arbitration agreements." (Doc. 27, Ex. 1 ¶2.) The Alabama Supreme Court has acknowledged that "entire

---

unsconscionability. As support for assertions two through five, Powell does not submit her own declaration regarding her knowledge, but the declaration of her former boss, attorney Stan Morris. (Doc. 27, Ex. 2.) ATTM filed a motion to strike the declaration for lack of personal knowledge and hearsay. (Doc. 29.) ATTM's motion is GRANTED to the extent Morris's declaration makes assertions regarding Powell's knowledge or understanding of contract offerings and provisions; Powell's willingness to travel to New York and whether she would have sued a company if she were required to litigate in New York; ATTM's procedures for offering the Terms of Service for review prior to customers signing a statement that the Terms were presented prior to signing; and the iPhone's availability for use on other networks. The Court agrees that these statements are based on inadmissible hearsay and/or Morris failed to establish his personal knowledge for the assertions.

segments of the market for certain goods and services . . . are being closed

to consumers who are unwilling to forfeit the rights guaranteed them by the

federal and state constitutions." *Branch*, 793 So. 2d at 751.  Therefore, in

order to establish procedural unconscionability, a plaintiff may show "that

she was unable to acquire goods or services without considerable

expenditure of time and resources." *Id*.  Unlike the plaintiff in *Branch*, who

submitted evidence that there were sixteen available loan providers, and

out of eight such providers, only one offered a loan without requiring an

arbitration provision, Powell does not give the total number of wireless

telephone service providers available to her.  902 So. 2d 641.  Norris's

declaration also fails to specify whether the arbitration agreements were

required by other cell phone providers at the time Powell purchased her

wireless telephone.   Without such evidence, the Court "is unable to

conclude that [Powell] could not have secured a [wireless service]

agreement without considerable expenditure of time and resources." *Id*. at

647.  The time and resources required to research sixteen companies is

distinct from the time required to investigate four or five companies, and

it is undisputed that during the times relevant to this action, Virgin Mobile did not require customers to agree to an arbitration clause.

Powell argues that Virgin Mobile is a "small carrier," offering "rudimentary wireless and data services" that are "not competitive with such carriers as AT&T, Verizon, and T-Mobile."   (Doc. 27 at 2.)   The "product" in this case, however, is wireless telephone service.   The fact that Powell wanted an "advanced smartphone" like the Apple iPhone 3GS, which she contends was only available from ATTM (*id.*) only shows that the ATTM service plan was the "best . . . available to her at the time" in terms of service features and coverage.   *Rigas*, 923 So. 2d at 1089.   The fact that ATTM's wireless telephone service contract, which included an arbitration provision, was the best contract available to Powell "does not make the arbitration provision . . . unconscionable."   *Id.*; *see also Service Corp. Intern. v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003) ("A party may freely choose to give up his constitutional right to a jury trial even when doing so is required to receive some good or service, and when he has done so he has weighed the costs of not having the good or service and has found those costs to outweigh the value to him, at that time, of the perceived benefit

of a future jury trial in the occurrence of a future dispute. In such a situation, he has also factored in and found favorable the benefits of arbitration.").

Powell has not met her burden to establish procedural unsconscionability.

B.    Substantive Unconscionability.

Because Powell has not shown procedural unconscionability, it is not necessary for the Court to address the issue of substantive unconscionability. *Rigas*, 923 So. 2d at 1090.  However, the Court finds that even if Powell established procedural unconscionability in this case, she would still be required to arbitrate her claims against ATTM because substantive unconscionability does not exist.

Powell argues that the arbitration provision in ATTM's Terms of Service is substantively unconscionable because it contains a class action litigation waiver that forecloses a remedy.[4]  Powell maintains ATTM can simply offer

---

[4]ATTM's Terms of Service also specifically exclude class action arbitrations.  The U.S. Supreme Court recently held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contactual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen, S.A. v. Animal Feeds Int'l Corp.*, --- S.Ct. --- , 2010 WL 1655826 at *13 (April 27, 2010) (emphasis in original).

to compensate her the full cost of the phone (approximately $500), and she will not recover attorneys' fees.  Alabama law does not provide for the recovery of attorneys' fees for the claims pursued in this action.  Powell contends that this is a "complex and technical case, which raises cutting-edge technological issues and which seeks to apply ancient torts to modern circumstances . . . .  No attorney would undertake such an investigation knowing that AT&T can simply offer $500 and take away that attorney's right to recover fees for these initial and necessary pre-proceeding steps." (Doc. 27 at 3.)

Class action waivers in arbitration agreements are enforceable.  *See, e.g.*, *Caley v. Gulfstream*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (11th Cir. 2001).  "As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims."  *Caley*, 428 F.3d at 1378 (internal quotations and citations omitted).  However, when the amount of recovery is negligible

compared to the cost of bringing an arbitration action, a class action waiver may effectively foreclose a plaintiff's remedy.  *See Dale v. Comcast Corp.*, 498 F.3d 1216, 1221 (11th Cir. 2007).  Therefore, the "enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." *Id*. at 1224.  "Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical [e]ffect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns." *Id*.

In *Leonard v. Terminix International Company*, 854 So. 2d 529 (Ala. 2002), the plaintiffs made an argument similar to Powell's.  Specifically, the plaintiffs argued:

> While a plaintiff with an individual $75,000 claim can probably get a lawyer on a contingent fee to represent him or her, ordinary persons such as the Leonards with a claim less than $500 could not, and thus would have to face Terminix's well-financed,

> aggressive battery of experienced lawyers by himself
> or herself in an arbitration, or else pay a lawyer by
> the hour for legal representation, which makes no
> sense in relation to the small dollar value claims at
> issue.

*Id*. at 535.  The Alabama Supreme Court concluded that the plaintiffs'

challenge was one of "unconscionability by reason of economic feasibility."

*Id*. at 537. Noting that the costs of arbitration included: "(1) a $500

arbitration filing fee; (2) a minimum $150 administrative fee per party; (3)

an administrative fee of $150-$250 per day per party for each hearing date;

(4) one-half of the average arbitrator's fee of $700 per day; (5) one-half the

cost of the charge for a meeting room; and (6) the cost of an attorney," *id*.

at 535, the court sided with the plaintiffs' contention that "the arbitration

clause mandates a procedure involving costs so great in comparison to the

potential recovery that the injured person is effectively precluded from a

remedy" *id*. at 537.  Because the agreement precluded class actions *and*

limited damages by prohibiting recovery for "indirect, special, and

consequential damages or loss of anticipated profits," the Alabama Supreme

Court concluded that the arbitration clause in *Leonard* was substantively

unconscionable.  *Id*. at 538.  However, similar facts and circumstances have not been established in this case.

In the arbitration agreement at issue, ATTM pays all the costs of arbitration, regardless of who prevails.  The arbitration clause does not limit a customer's recovery under the law, and ATTM waives any right to collect attorneys' fees.  Moreover, attorneys are enticed to represent customers by the possibility of recovering double attorneys' fees, plus expenses, if the arbitrator issues an award greater than the value of ATTM's last written settlement offer made before an arbitrator is selected.  Powell argues that the latter provision is "illusory," because ATTM will simply offer the maximum damages recoverable to avoid the risk of paying large attorneys' fees.[5]  Powell's argument ignores the fact, however, that in such a situation, the customer, without having to pay a filing fee or any costs of arbitration, receives the maximum recovery allowed by law.  Powell has not established that the costs of pursuing her claim in arbitration are so great in comparison

---

[5]While it is not determinative to the Court's holding in this action, it should be noted that ATTM has presented undisputed evidence that it is ATTM's policy to include an amount for reasonable attorneys' fees in a settlement offer.  (Doc. 23, Mendel Aff. ¶4.)

to the potential recovery that she is precluded from a meaningful remedy. *Leonard*, 854 So. 2d at 537.  Powell has not shown that the arbitration agreement at issue is one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."  *Rigas*, 923 So. 2d at 1086 (quoting *Howard*, 775 So. 2d at 163).

III.   Conclusion.

For the reasons outlined above, Defendant's motion to compel arbitration will be granted.  A separate order will be entered.[6]

Done this 30th day of September 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297

---

[6]On November 16, 2009, Powell filed a motion to amend the complaint to "more precisely state her claims of relief."  (Doc. 15.)  The proposed amendments are not relevant to the determination of whether the arbitration agreement in this case is binding and enforceable.  (Doc. 18.)  Because the Court finds that ATTM's motion to compel arbitration and dismiss is due to be granted, under both the Amended Complaint, which currently governs this action, and the proposed Second Amended Complaint, the motion to amend is deemed MOOT.